IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **EMMERT INDUSTRIAL CORPORATION,** an Oregon corporation, | CV 03-782-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **ARTISAN ASSOCIATES, INC.,** a Michigan corporation, | |
| Defendant. | |

**TIMOTHY R. HARMON**
**VICKI L. SMITH**
Lane Powell Spears Lubersky, LLP
601 S.W. Second Avenue
Portland, OR 97204-3158
(503) 778-2100

    Attorneys for Plaintiff

**JOHN A. ANDERSON**
Anderson and Yamada, P.C.
1515 S.W. Fifth Avenue, Suite 1020
Portland, OR 97201-5445
(503) 227-4586

1 - OPINION AND ORDER

**FREDERICK R. DAMM**
Clark Hill PLC
500 Woodward Avenue, Suite 3500
Detroit, MI  48226-3435
(503) 965-8300

Attorneys for Defendant

**BROWN, Judge.**

This matter comes before the Court on Artisan Associates, Inc.'s Renewed Motion for Summary Judgment (#65).

For the reasons that follow, the Court **GRANTS** Artisan's Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

On June 12, 2003, Plaintiff filed its Complaint alleging Defendant breached a contract between the parties by failing (1) to pay its remaining balance with Plaintiff and (2) to award Plaintiff the contract to move certain equipment and component parts.

On July 17, 2003, Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer for Improper Venue.  On November 12, 2003, the Court denied both the Motion to Dismiss and the Motion to Transfer Venue.

On January 12, 2004, Defendant filed a Motion for Partial Dismissal.  Defendant moved to dismiss Plaintiff's first two claims on the basis that the statute of limitations had run under

2 - OPINION AND ORDER

the Interstate Commerce Commission Termination Act of 1995 (ICCTA) and, in the alternative, for summary judgment on all claims. On February 13, 2004, Plaintiff responded to Defendant's Motion to Dismiss, and on March 8, 2004, Plaintiff filed a Motion for Leave to File an Amended Complaint. On June 23, 2004, the Court heard oral argument on both Motions.

At argument, the Court granted Defendant's Motion to Dismiss Plaintiff's first and second claims as time-barred under the ICCTA. The Court also granted Plaintiff's Motion to File an Amended Complaint. The Court informed Plaintiff that the Amended Complaint "should make clear from plaintiff's perspective what facts plaintiff will point to to show that the [ICCTA] does not apply and thus the case is not time-barred." Defendant then withdrew its Motion for Summary Judgment.

On July 9, 2004, Plaintiff filed its Amended Complaint alleging (1) Defendant breached the contract when it failed to pay its remaining balance to Plaintiff; (2) quantum meruit with respect to the remaining balance; (3) Defendant breached the contract when it failed to award all of the remaining equipment moves to Plaintiff; (4) Defendant breached the contract when it disclosed confidential and proprietary information; and (5) Defendants misappropriated trade secrets. On December 15, 2004, the parties stipulated to the dismissal of Plaintiff's misappropriation claim.

On December 30, 2004, Defendant filed a Renewed Motion for Summary Judgment on Plaintiff's remaining claims. In Plaintiff's Response, Plaintiff states it is dismissing its claim for disclosure of confidential and proprietary information. Accordingly, only Plaintiff's claims for breach of contract and quantum meruit are before the Court.

**FACTUAL BACKGROUND**

The following facts are undisputed unless otherwise noted.

Emmert is an engineering and transportation company that specializes in the transportation by truck of objects weighing more than 100,000 lbs. Artisan is a coordinator of complex transportation projects and serves as a broker between shippers and carriers and other vendors and contractors.

In May 1996, Artisan solicited bids on behalf of its principal, General Motors (GM), for transportation and other services relating to delivery of six metal-stamping machines from Japan through the ports of Savannah, Georgia, and New Orleans, Louisiana, and on to various GM plant locations in Missouri and Michigan. These moves were collectively referred to as the "press project." Artisan's duties with respect to brokering the press project included preparing a request for quotation (RFQ) for carrier services, reviewing responsive bids, and supervising the selected carriers' efforts to perform the moves.

In June 1996, Artisan accepted a bid from Emmert through the RFQ process to be the "primary carrier" on the press project "on all components that weigh more than 100,000 pounds." Artisan instructed Emmert to "proceed with the necessary planning."

In June 1996, Emmert went to Japan to inspect the items to be moved and to verify dimensions. Emmert also surveyed port facilities to determine the most effective unloading and reloading processes. Emmert prepared a detailed pre-moving analysis and route survey for the benefit of both Artisan and GM.

Emmert also prepared route plans for its own use for the Doraville, Georgia, phase of the project, which involved transporting the presses from the port of Savannah, Georgia, to Doraville, Georgia. Emmert also held personnel and equipment in reserve for the purpose of transporting the heavy press components to Doraville, worked with civil authorities including port and state and local highway authorities, restored the equipment to its pre-move condition, and arranged and paid for a third party to install equipment to monitor and to detect "strain" on bridges over which Emmert's vehicles would pass. Emmert then transported the presses on its trucks.

Emmert completed two projects identified by the parties as the "Doraville" and "Wentzville" projects. Emmert invoiced Artisan for these projects and for services in preparation for a third press project involving transportation to Flint, Michigan,

for a total of $4,900,931.02. Artisan paid Emmert $4,195,557.44. Emmert alleges these payments leave "an unpaid balance of not less than $570,000," with the exact balance to be determined at trial.

On July 31, 1997, GM reminded Artisan in writing that Artisan was scheduled to move another press in early 1998 and stated, "Based upon our experience with using Emmert, please provide a quote to deliver this press . . ., using carriers other than Emmert." GM's logistics liaison, Rand Kulkis, instructed Artisan orally not to use Emmert for remaining moves on the press project.

On July 31, 1997, Artisan informed Emmert that Artisan did not receive the contract from GM to broker the remaining component move and that Emmert did not receive the contract to move the remaining press parts to Michigan and Missouri.

The press project moves that remained after GM's July 31, 1997, letter were (1) parts of two presses to be moved to Pontiac, Michigan; (2) one press to be moved to another GM facility in Missouri; and (3) component shipments. Artisan brokered the shipments to Michigan and Missouri to another carrier. GM did not use Artisan as its broker on the component shipments.

On October 20, 1997, Artisan advised Emmert it would not pay any remaining balance due Emmert.

6 - OPINION AND ORDER

**STANDARDS**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer,*

7 - OPINION AND ORDER

*Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## DISCUSSION

### I. Plaintiff's First and Second Claims

Plaintiff alleges Defendant breached the contract by refusing to pay Plaintiff the balance remaining on Plaintiff's invoices. Plaintiff also alleges in quantum meruit that the fair value of the services rendered by Plaintiff is $4,900,931.02.

Defendant contends Plaintiff's First and Second Claims are preempted by the ICCTA, which has an 18-month statute of limitations for all actions to recover charges relating to transportation services. Plaintiff, however, argues the services for which it seeks payment are not transportation services within the meaning of the ICCTA. According to Plaintiff these claims, therefore, are not preempted by the ICCTA and are only subject to the six-year statute of limitations for breach-of-contract actions.

The ICCTA provides:

> (a) A carrier providing transportation or service [under this chapter] must bring a civil action to recover charges for transportation or service provided by the carrier within 18 months after the claim accrues.

8 - OPINION AND ORDER

> (g) A claim related to a shipment of property accrues under this section on delivery or tender of delivery by the carrier.

49 U.S.C. § 14705(a) and (g). The ICCTA defines a carrier as "a motor carrier, a water carrier, and a freight forwarder." 49 U.S.C. § 13102(3). The Act defines a motor carrier as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(12). The Court finds Plaintiff is a motor carrier as that term is defined in the ICCTA.

The transportation services governed by the 18-month statute of limitations under the ICCTA are not limited to the actual movement or shipment of items. The ICCTA definition of transportation that relates to motor carriers includes:

> (A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and
>
> (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.

49 U.S.C. §13102(21). The transportation services for motor carriers identified in the ICCTA definition are quite broad and include services beyond mere physical transportation.

Although the Ninth Circuit does not appear to have addressed the definition of transportation services for motor

9 - OPINION AND ORDER

carriers or the applicability of the statute of limitations under the ICCTA to a fact scenario similar to the one in this case, other courts have done so. For example, in *Ash v. ArtPack Int'l, Inc.*, the district court rejected the plaintiff's argument that the defendant did not provide transportation under the ICCTA because the only payment the plaintiff made to the defendant was payment for packing the fixtures to be transported. No 96 Civ. 8440(MBM), 1998 WL 132932, at *5 (S.D.N.Y. Mar. 23, 1998). The court reasoned the plaintiff's argument was based on "an overly restrictive definition of the term 'transportation.'" *Id*., at *6. The court noted the ICCTA "broadly defines the term 'transportation' to include incidental services related to movement of passengers and property including . . . storage, handling, packing, unpacking and interchange of property." *Id*. (citation omitted). Accordingly, the court held the defendant was covered by the ICCTA, and the plaintiff's claims, therefore, were time-barred. *Id*.

Similarly, in *PNH Corp. v. Hullquist Corp.*, the First Circuit noted the defendant's service of storing goods bound for interstate transport would have constituted transportation within the meaning of the ICCTA if the defendant had been a motor carrier under the ICCTA. 843 F.2d 586, 591 (1st Cir. 1988). The court reasoned the broad definition of transportation for motor carriers under the ICCTA "includes all services incident to

carriage and delivery." *Id*. at 590 (internal quotation omitted).

In support of its argument, Plaintiff relies on *PNH Corp.* as well as *Steve Marchionda & Assoc. v. Weyerhaeuser Co.*, 11 F. Supp. 2d 269 (W.D.N.Y. 1998), and *Hartzberg v. New York Central R. Co.*, 191 Misc. 129, 41 N.Y.S.2d 345 (1943). The two latter cases, however, involve situations in which goods were never delivered, and, therefore, they are inapplicable to Plaintiff's first two claims.

Here the services for which Plaintiff seeks reimbursement are all incident to the carriage and delivery of the presses and press components. Although Plaintiff seeks to characterize them as engineering or consulting services, they actually arise out of the transportation of goods. Accordingly, the Court concludes the services for which Plaintiff seeks reimbursement under its first two claims are for transportation and are covered by the ICCTA.

The parties do not dispute Plaintiff provided services for Defendant only until May 1997. In order to recover for the unreimbursed costs of services under the ICCTA, therefore, Plaintiff would have had to bring this action before November 1998. Plaintiff, however, did not file its Complaint until June 2003.

Thus, the Court concludes Plaintiff's First and Second claims, therefore, are barred by the ICCTA 18-month statue of

11 - OPINION AND ORDER

limitations and Defendant is entitled to summary judgment on Plaintiff's First and Second Claims.

## II. Plaintiff's Third Claim

In its Third Claim, Plaintiff alleges Defendant breached the contract when it failed to allow Plaintiff to complete the remaining moves of presses and press parts and, as a result, prohibited Plaintiff from realizing a profit on these moves.

Defendant contends it is entitled to summary judgment on this claim because (1) Plaintiff did not receive an exclusive appointment for transportation of the presses; (2) Defendant could not award such moves to Plaintiff because Defendant did not receive orders for them from GM; and (3) Plaintiff's alleged lost profits are too speculative. Because Defendant's first contention resolves this claim, the Court need not address Defendant's second and third arguments.

### Plaintiff Did Not Receive an Exclusive Appointment for Transportation of Presses

On June 6, 1996, Defendant informed Plaintiff that Plaintiff was to be the "primary carrier on the . . . Press Project." Under Oregon law, "[a] contract with unambiguous terms is generally interpreted according to the plain meaning of those terms." *Value Mobile Homes, Inc. v. Bank of Am. Or.*, 132 Or. App. 1, 5, 887 P.2d 387 (1994), *as modified by* 133 Or. App. 261, 891 P.2d 695, *rev. denied,* 322 Or. 167 (1995).

The word "primary" is not ambiguous. The Merriam-Webster's

12 - OPINION AND ORDER

Dictionary defines "primary" as: "**1:** first in order of time or development; **2:** of first rank, importance, or value." *Merriam-Webster's Dictionary* 925 (10th ed. 1998)(emphasis in original). Thus, the use of the word "primary" suggests there would be other carriers of secondary importance or rank. This conclusion is further supported by the fact that the bid package for the press project, in which Defendant invited Plaintiff to participate, did not provide for or suggest Defendant intended to award the project to only one carrier.

The Court, therefore, concludes Defendant did not designate Plaintiff as the exclusive carrier for the press project, and Defendant was within its rights when it allowed a carrier other than Plaintiff to transport certain portions of the project. Accordingly, the Court concludes Defendant is entitled to summary judgment on Plaintiff's Third Claim.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (#65) as to Plaintiff's First, Second, and Third

Claims.

IT IS SO ORDERED.

DATED this 20th day of April, 2005.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge

Emmert CV 03-782 O&O.04-20-05.wpd