IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EMMERT INDUSTRIAL CORP.,  
an Oregon corporation,

        Plaintiff,

v.

ARTISAN ASSOCIATES, INC.,  
a Michigan corporation,

        Defendant.

03-CV-782-BR

OPINION AND ORDER

HOLLIS K. MCMILAN  
Hollis K. McMilan, P.C.  
Suite 2950 Pacwest Center  
1211 S.W. Fifth Ave.  
Portland, OR  97204  
(503) 972-5092

KENNETH C. BAUMAN  
11811 S.E. Hwy. 212  
Clackamas, OR  97015  
(503) 655-7191

        Attorneys for Plaintiff

1  -  OPINION AND ORDER

**ERIC J. NEIMAN**
**J. RICHARD URRUTIA**
**SHARON C. PETERS**
Williams, Kastner & Gibbs PLLC
888 S.W. Fifth Ave, Suite 600
Portland, OR 97204
(503) 228-7967

**F.R. (FRITZ) DAMM**
Scopelitis, Garvin, Light, Hanson, & Feary, P.L.C.
535 Griswold Street
Detroit, MI 48226
(313) 687-2414

       Attorneys for Defendant

**BROWN, Judge.**

   This matter comes before the Court on Defendant Artisan Associates, Inc.'s Motion for Summary Judgment (#109) against Plaintiff Emmert Industrial Corp.'s Third Claim for Breach of Contract.  For the following reasons, the Court **GRANTS in part** and **DENIES in part** Artisan's Motion.


## BACKGROUND

   Emmert is an engineering and transportation company that specializes in the truck transportation of heavy objects. Artisan serves as a broker between the shipper and the carrier of such objects.

   In June 1996 Artisan, acting as an agent on behalf of General Motors, brokered and accepted a bid by Emmert to be the

2  - OPINION AND ORDER

"primary carrier" to transport components of metal-stamping presses weighing more than 100,000 lbs. from ports in Savannah, Georgia, and New Orleans, Louisiana, to various General Motors plants.  Emmert completed two of four contemplated moves as "primary carrier."  In July 1997, however, General Motors instructed Artisan not to use Emmert in any further transportation of press components, including the remaining "Pontiac" and "Wentzville" moves.

In its Amended Complaint, Emmert asserts five claims against Artisan, including claims for breach of contract, quantum meruit, and misappropriation of trade secrets.

On June 23, 2004, this Court granted Artisan's Motion to Dismiss certain claims based on the statute of limitations.  On April 20, 2005, the Court also granted Artisan's Motion for Summary Judgment that the contract term providing for Emmert to be the "primary carrier" in transporting components of General Motors' presses did not mean that Emmert was to be the "exclusive carrier" for the transportation of all components.

The Ninth Circuit affirmed in part and reversed in part this Court's dispositive rulings and remanded the case for further proceedings.  *Emmert Indust. Corp. v. Artisan Assoc., Inc.*, 497 F.3d 982 (9th Cir. 2007).  The Ninth Circuit upheld this Court's dismissal of Plaintiff's first two claims based on the statute of limitations but reversed this Court's "premature"

3  - OPINION AND ORDER

ruling that no genuine issue of material fact existed as to whether Emmert had the exclusive right to transport all of General Motors' presses.  The Ninth Circuit agreed "the parties' contract did not expressly grant Emmert an exclusive right" to move the presses but concluded this Court should also have made findings as to "what rights Emmert was granted" and "the amount of work necessary for Emmert to perform to be considered the 'primary carrier' on moves of components weighing over 100,000 pounds."  *Id.* at 990.

## STANDARDS

Fed. R. Civ. P. 56©) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th

Case 3:03-cv-00782-BR   Document 122   Filed 06/16/08   Page 5 of 18

Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Villiarmo,* 281 F.3d at 1061.  A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary."  *Wong v. Regents of Univ. of Cal.,* 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller Prod. Inc.,* 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id.*

## DISCUSSION

Artisan seeks summary judgment on two discrete grounds or, in the alternative, summary judgment on three grounds relating to the scope of the contract and the amount of potential damages.

5  -  OPINION AND ORDER

I.   **Artisan's Motion for Summary Judgment as to te meaning of the term "primary carrier."**

Artisan asserts Emmert has incorrectly interpreted the term "primary carrier" as meaning Emmert was supposed to be the "exclusive carrier" in the context of the contract between the parties.  Artisan points out, however, that the Ninth Circuit agreed with this Court that the contract between Artisan and Emmert "did not expressly grant Emmert an exclusive right to Press Project moves."  *Emmert,* 497 F.3d at 991.

As to the term "primary carrier," Pauline Canty, Artisan's general manager, testified "[p]rimary does not ever mean exclusive" at Artisan.

> It means that the carrier, if they're chosen
> as primary, would be able to do, you know,
> most of the work if they were able to do
> that.  However, there are some instances
> where even if they were awarded primary and
> there were issues or items that came up, we
> may, you know, determine that we don't want
> to use them any longer, and/or if the
> customer requests that we not use a
> particular carrier we wouldn't use them.

Def.'s Mem. in Support of Mot. for Summary J., Ex. 20, Canty Dep. at 28 (Feb. 8, 2008).

In an earlier deposition, however, Canty also testified:

> Primary carrier means that the carrier who is
> primary would be the one who would
> potentially receive a lot of the work, not
> necessarily all of the work, but they would
> be primary to be able to handle the shipments
> that were in question.

6 - OPINION AND ORDER

> \* \* \*
>
> It could mean most, *it could be whatever they could handle, whatever they just wanted to handle*.
>
> \* \* \*
>
> They would be determined to be the primary carrier [if they can handle it and will handle it].

Pl.'s Mem. in Opposition to Mot. for Summary J., McMilan Decl., Ex. 1, Canty Dep. at 70, 71 (Nov. 10, 2004)(emphasis added).  On the other hand, Emmert contends the term "primary carrier" is at the least ambiguous and that extrinsic evidence supports its view that the term means Emmert was entitled under the contract  to perform "whatever moves [Emmert] wanted to handle" under the contract.

Emmert's founder, Terry Emmert, was responsible for preparing the company's bid on the project.  He avers he understood the term "primary carrier" to mean that "Emmert would be the carrier [for the presses] which it was ready, willing, *and able* to move."  Def.'s Mem. in Support of Mot. for Summary J., Ex. 9 at ¶ 12 (emphasis added).  According to Terry Emmert, Artisan never told anyone at Emmert that its "right to participate in all phases of the press project . . . depended upon GM's approval."

In July 1997, General Motors instructed Artisan, both in writing and orally, not to use Emmert on further moves and also

7  - OPINION AND ORDER

stated: "Based on our experience with using Emmert, please provide a quote to deliver this press to Wentzville, using carriers other than Emmert."

Based on General Motors' instruction, Artisan brokered General Motors' press moves that occurred after July 1997 with other transporters. Moreover, some press moves were not even brokered by Artisan after that date.

On this record, the Court concludes the term "primary carrier" is ambiguous under the agreement as to the extent of Emmert's participation in the transportation of General Motors' presses, and, therefore, genuine issues of material fact exist as to the rights of General Motors, Artisan, and Emmert under the agreement. General Motors does not explain why it decided Emmert should not be permitted to transport further press components; thus, General Motors' instruction, at the least, raises the issue whether Emmert was capable of satisfactorily performing the remainder of the moves in light of past performance. Finally, the Court concludes the term "primary carrier" does not mean "exclusive carrier" in all circumstances. Thus, resolution of the factual issues is necessary before the Court or a jury is in a position to determine the intended meaning of the term "primary carrier" as used in the agreement.

Accordingly, the Court **DENIES** Defendant Artisan's Motion for Summary Judgment as to the meaning of "primary carrier."

**II. Artisan's Motion for Summary Judgment that Emmert's claim is barred by the Doctrine of Impossibility or by failure of an implied condition precedent.**

Artisan contends in its role as broker that it "had no choice but to do as [General Motors] instructed - and not award any [further] moves to Emmert."  Thus, Artisan argues its performance under the agreement between itself and Emmert as to hiring Emmert for the remaining press moves was impossible and/or was subject to the condition precedent that General Motors allow the moves to be made by Emmert.

    A.   <u>Impossibility of Performance</u>.

The *Restatement (Second) of Contracts* § 266 (1979) provides:

> (1) Where, at the time a contract is made, a party's performance under it is impracticable without his fault because of a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made, no duty to render that performance arises, unless the language or circumstances indicate the contrary.

Artisan asserts "it would have been impossible to have Emmert move the presses contrary to General Motors' instructions," and, therefore, it cannot be liable to Emmert for damages arising from its actions in compliance with General Motors' instructions.

In *Twin City Fire Insurance Company v. Philadelphia Life Insurance Company*, the Ninth Circuit applied Oregon law, cited the *Restatement (Second) of Contracts*, and noted "the first rule"

9  - OPINION AND ORDER

of *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145 (1854), is that "[l]iability for damages [from breach of contract] results not from the agreement to assume liability, but from the promise to deliver the good[s]."  795 F.2d 1417, 1428 (9th Cir. 1986). At the trial in *Twin City*, the district court entered a directed verdict for the plaintiff after barring the defendant insurance broker from presenting evidence that he was not liable for breach of his promise to procure an annuity contract for an Oregon insured based on his defense of impossibility of performance. The Ninth Circuit concluded the defendant broker had presented sufficient evidence of impossibility of performance; *i.e.,* the broker did not have any reason to know that the annuity could not be issued by the insurer to the insured in Oregon.  The Ninth Circuit, however, left it to the district court to decide whether the impossibility defense should ultimately be decided by the trial court as a matter of law based on the evidence adduced at trial or by the jury as a matter of fact.  Subsequently, the Ninth Circuit in *Interstate Markings, Inc. v. Mingus Construction* concluded the question as to whether a subcontractor was unable to perform a contract job because it was impossible constituted a jury question.  941 F.2d 1010, 1014 99th Cir. 1991).

     The only undisputed evidence here is that General Motors did not authorize Artisan to use Emmert on future shipments "based upon [General Motors'] experience in using Emmert."  As noted,

10 - OPINION AND ORDER

the specific reason(s) why General Motors made that decision are not clear.  Moreover, the record does not reflect whether Artisan knew or should have known when it contracted with Emmert to be the "primary carrier" that there might be limits placed on the contractual undertaking based on performance.

On this record, therefore, the Court concludes issues of fact exist as to whether the defense of impossibility of performance applies in this case to absolve Artisan from liability arising from its promise to use Emmert in moving all of General Motors' presses.

B.  <u>Failure of an Implied Condition Precedent</u>.

Artisan asserts General Motors' permission was an implied condition precedent to the enforceability of its agreement to use Emmert as the transporter of General Motors' presses.  In support of that proposition, Artisan contends the evidence establishes Terry Emmert knew that Emmert would not be given the moving jobs if (1) General Motors did not award Artisan the work to broker future press moves, (2) General Motors cancelled the moves, or (3) an entity other than General Motors took control of the movement of particular presses.  Accordingly, Artisan contends an implied condition precedent to any agreement with Emmert was that Artisan "would actually be able to award the work to Emmert."  Terry Emmert, however, avers "[n]o one at Artisan ever told me or anyone else at Emmert . . . that Emmert's right to participate in

11 - OPINION AND ORDER

all phases of the Press Project after Artisan designated Emmert as the primary carrier depended on [General Motors'] approval."

On this record, the Court concludes a genuine issue of material fact exists as to whether the defense of failure of a condition precedent applies in this case to absolve Artisan from liability arising from its promise to use Emmert in moving General Motors' presses.

In summary, the Court **DENIES** Artisan's Motion for Summary Judgment that Emmert's claim is barred by the Doctrine of Impossibility or by the failure of an implied condition precedent.

**III. Artisan's Motion for Summary Judgment as to Emmert's claim for damages arising from moves not brokered by Artisan.**

In Emmert's Third Claim in its Amended Complaint, Emmert seeks damages for breach of contract arising from lost profits resulting from press moves that "Artisan or GM awarded to an alternative carrier." Emmert's original Complaint did not include the language "or GM." Emmert concedes in its Amended Complaint filed in June 2004 that it changed its position by asserting damage claims arising from the "Wentzville" move, which was not brokered by Artisan.

Artisan contends the doctrine of judicial estoppel bars Emmert from changing its position after representing in a memorandum to this Court in February 2005 and later in its

12 - OPINION AND ORDER

appellate brief in the Ninth Circuit that it was seeking damages only for moves brokered by Artisan.

> Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position.  This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts.

*Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782-83 (9th Cir. 2001)(internal citations omitted).  In *New Hampshire v. Maine,* the Supreme Court noted:  "Because the rule is intended to prevent 'improper use of judicial machinery,' judicial estoppel is an 'equitable doctrine invoked by a court at its discretion.'" 532 U.S. 742, 750 (2001)(internal citations omitted).  The Supreme Court set out when it is appropriate to invoke the rule:

> [*C*]*ourts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position*, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.  *Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations*.

*Id*. (emphasis added).  Emmert argues the Court should exercise its discretion not to invoke the doctrine of judicial estoppel because Artisan "has utterly failed to provide any fact or

13 - OPINION AND ORDER

argument that would support a finding of either unfair detriment or unfair advantage."

The Court agrees seeking damages for losses resulting from moves not brokered by Artisan is inconsistent with Emmert's pleadings as a whole and with the explicit position previously taken by Emmert. For example, Emmert's prayer as to the Third Claim in its Amended Complaint limits the relief sought to "Emmert's expenses incurred and lost profits for all moves that were included in its contract with Artisan, *but which Artisan awarded to others*." (Emphasis added.) Emmert also argued to the Ninth Circuit that:

> Emmert brought this action alleging claims for breach of contract and quantum meruit concerning the amounts Artisan owed to Emmert, and for breach of contract for the *remaining Press Project work that Artisan gave to other carriers* . . . .

Def.'s Mot. for Summary J., Ex. 21 at 2.

The Court also agrees with Emmert that neither this Court nor the Ninth Circuit has yet issued a ruling specifically addressing the previous position taken by Emmert. Moreover, although Emmert's prayer in its Amended Complaint is inconsistent with the damages allegation in its Third Claim, the allegation itself when construed liberally could encompass a claim such as that now asserted by Emmert. In the exercise of its discretion, the Court declines for these reasons to apply the Doctrine of Judicial Estoppel to Emmert's Third Claim. The Court, however,

14 - OPINION AND ORDER

will allow Defendants to amend their Answer, if necessary, to assert any relevant affirmative defense to Emmert's Third Claim as it has evolved.

Accordingly, the Court **DENIES** Artisan's Motion for Summary Judgment as to damages arising from moves not brokered by Artisan.

## IV. Artisan's Motion for Summary Judgment as to Emmert's claim for "standby" damages.

Artisan seeks summary judgment that Emmert is not entitled to standby damages of $129,449 for the four months between the "Pontiac" move and the "Wentzville" move.

In December 2007, Emmert responded to Artisan's supplemental interrogatories by asserting for the first time that its claim for lost profits included $129,449 for "equipment standby charges" allegedly incurred during the period between the Pontiac and Wentzville moves. Emmert concedes there was not an agreement between Artisan and Emmert as to those standby charges specifically. Emmert, however, bases its claim on the "course of dealing" between Artisan and Emmert on the moves actually performed by Emmert and the "standard industry practice" for such moves. Emmert asserts such charges reflect "ever-changing realities" and "changed circumstances." Specifically, Terry Emmert states:

> The bids I prepared relating to Wentzville and Pontiac were based on certain assumptions

15 - OPINION AND ORDER

> including the assumption that Emmert's
> equipment and labor would be used continu-
> ously from move to move. . . .  Given the
> history of dealing between Emmert and Artisan
> and standard Industry Practice, *I believe I
> would have been able to successfully nego-
> tiate payment for standby time for its equip-
> ment to cover the four month period.* . . .

(Emphasis added.)

Although the Court concludes a genuine issue of material fact exists as to the specifics of any such "course of dealing" or "standard industry practice," there is not any evidence that Emmert would have been successful in negotiating a specific amount even if a "course of dealing" or "industry practice" to negotiate Emmert's right to such costs exists.  Thus, the amount now claimed by Emmert is at best speculative and depends on the uncertain outcome of any negotiations that might take place.  The Court, therefore, concludes such uncertainty precludes Emmert's claim for standby costs.

Accordingly, on this record, the Court **GRANTS** Artisan's Motion for Summary Judgment as to Emmert's entitlement to damages for standby costs.

**V.   Artisan's Motion for Summary Judgment as to Emmert's claim for lost profits for shipments to Wentzville.**

Emmert submitted a bid to Artisan totaling $338,550 for a move of three crowns (press components) to Wentzville.  In the meantime, General Motors instructed the manufacturer of the crowns to handle the shipment directly because of previous

16 - OPINION AND ORDER

manufacturing delays. The manufacturer, in turn, solicited bids from Artisan and another broker, Nippon Express, to obtain a shipper. Artisan rejected the bid. Emmert then resubmited a bid to Artisan to do the job for $481,250, which Artisan again rejected. Emmert then submitted a bid in the amount of $485,000 to Nippon Express, who also rejected it. In the end, Artisan never brokered the move. Emmert now seeks to recover from Artisan lost profits arising from this job in the amount of $485,000.

Artisan seeks summary judgment that Emmert's lost-profits claim is speculative, is based on a rejected bid, and cannot be proven to a reasonable probability. *See Welch v. Bancorp Realty and Mortgage Trust,* 286 Or. 673, 704 (1979). Emmert, however, contends the actual amount of its lost profits from failing to get the job to move the three crowns is an issue of fact for the jury. The Court agrees. "The court should intervene only when it can say that the evidence is clearly insufficient to establish the claim of lost profits." *Id.* at 705. *See also City of Eugene v. Monaco*, 171 Or. App. 681, 688 (2000)("[W]hen a plaintiff asserts a claim for damages for future harm, the question whether those damages are recoverable is a question of fact for the jury, the answer to which will depend on the evidence adduced at trial.").

17 - OPINION AND ORDER

The Court, therefore, concludes genuine issues of material fact exist as to the amount of Emmert's lost profits, if any, resulting from Artisan's rejection of Emmert's bid.

Accordingly, the Court **DENIES** Artisan's Motion for Summary Judgment as to Emmert's lost-profits claim.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendant Artisan Associates, Inc.'s Motion for Summary Judgment (#109).

IT IS SO ORDERED.

DATED this 12th day of June, 2008.

/s/ Michael W. Mosman for

_____
ANNA J. BROWN
United States District Judge

18 - OPINION AND ORDER